UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN H.,[1]

                                    Plaintiff,        Case # 20-cv-404-FPG

v.                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
_____

## INTRODUCTION

On December 13, 2014, Plaintiff Steven H. protectively applied for Supplemental Security Income under Title XVI of the Act. Tr.[2] 26. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge Stephen Cordovani on August 29, 2019. Tr. 23,24. At the hearing, Plaintiff and a vocational expert testified. On September 16, 2019, the ALJ issued an unfavorable decision. Tr. 21. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-3. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 14, 15. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 11.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

I.   **District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II.  **Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 13, 2014, the alleged onset date. Tr. 26. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disorder of the right shoulder and ankylosing spondylitis of the lumbar and cervical regions. Tr. 27.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 28. The ALJ determined that Plaintiff maintained the RFC to perform light work. Tr. 29. However, the ALJ found that Plaintiff had additional exertional limitations including that Plaintiff: can lift and carry twenty pounds occasionally and up to ten pounds continuously; can sit for four hours continuously and seven hours total; can stand three hour continuously and four hours total; can walk three hours continuously and four hours total; can frequently overhead reach along with frequent foot controls; can occasionally balance on uneven ground or terrain; can frequently stoop, kneel, crouch, crawl; cannot climb ladders, ropes or scaffolds; can only occasionally work at unprotected height or around dangerous moving technical parts; can occasionally drive; can have occasional exposure to extreme heat or cold; can have frequent exposure to extreme wetness or humidity; can be subject to frequent vibration; and can be moderately exposed to noise. *Id.*

At steps four and five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform including, for example, routing clerk, housekeeping cleaner, and small products assembler. Tr. 33. As such, the ALJ found that Plaintiff was not disabled.

**II.     Analysis**

Plaintiff's challenges on appeal can be organized into four central issues, which the Court addresses in turn.

**A.     Dr. Clerk's Opinion**

On March 20, 2017, Dr. Harnath Clerk—Plaintiff's treating physician—assessed Plaintiff for a physical medical source statement.[4]  Tr. 495-99.  He diagnosed Plaintiff with ankylosing spondylitis, and he opined that Plaintiff would constantly be distracted by pain, would be unable to sit, stand, or walk for more than two hours each workday, and would be incapable of working even "low stress" jobs.  Tr. 495-97.  The ALJ gave Dr. Clerk's opinion little weight and limited Plaintiff to light work.  Tr. 29, 32.

On two grounds, Plaintiff argues that the ALJ erred when he failed to give Dr. Clerk's opinion controlling weight.

First, Plaintiff argues that the ALJ did not consider the regulatory factors when considering Dr. Clerk's opinion.  *See* ECF No. 14-1 at 19-20.  Even if the ALJ failed to explicitly consider every relevant regulatory factor, this argument does not warrant remand.  This is because ALJ properly identified a "good reason" to reject Dr. Clerk's opinion: its inconsistency with the record as a whole.  *See* 20 C.F.R. § 416.927(c)(4); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *Nunez v. Saul*, No. 18-CV-1952, 2020 WL 967475, at *9 (D. Conn. Feb. 28, 2020) ("[A]lthough the ALJ did not expressly address all of the *Burgess* factors, the ALJ did not traverse the treating physician rule because he provided 'good reasons' for applying little weight to [the treating physician's] opinion because it was inconsistent with the record as a whole.").

---

[4] The medical source statement lists both Dr. Clerk and Christopher Pease, P.A.  The Court's analysis is the same whether one or both of those individuals completed the medical source statement.

The ALJ gave little weight to Dr. Clerk's opinion because the restrictions Dr. Clerk identified were "simply inconsistent with [Plaintiff's] activity level." Tr. 32. This is a reasonable conclusion. For example, Dr. Clerk's medical source statement indicates that Plaintiff can only sit for 15 minutes at a time. Tr. 496. Meanwhile, Plaintiff testified to being able to drive for up to an hour. Tr. 54. Dr. Clerk also opined that Plaintiff could stand for up to 15 minutes at a time, Tr. 496, but physical examinations often revealed normal results, including normal movement, full range of motion in the spine, and no instability. Tr. 30, 479, 518, 520, 553, 827-28, 830-31, 835-36, 839-40. Moreover, Plaintiff reported engaging in routine exercise activities, swimming, and hauling ladders. Tr. 439, 473, 524, 575, 830. Dr. Clerk's own treatment notes advised Plaintiff to do thirty minutes of exercise six times per week and encouraged him to continue swimming, but Dr. Clerk's opinion indicated that Plaintiff was only able to reach, grasp, and manipulate his fingers for less than 5% of each workday. Tr. 498, 797. In light of these inconsistencies, the ALJ was not wrong to give Dr. Clerk's opinion less weight. 20 C.F.R. § 416.927(c)(4); *Cottrell v. Comm'r Soc. Sec.*, No. 17-CV-6893-FPG, 2019 WL 201508, at *4 (W.D.N.Y. Jan. 15, 2019). Although Plaintiff identifies other evidence that is consistent with Dr. Clerk's opinion, *see, e.g.*, ECF No. 14-1 at 22, such evidence merely shows there was a "conflict in the record, one which the ALJ was entitled to resolve." *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021).

Second, Plaintiff contends that the ALJ provided only vague reasons for rejecting Dr. Clerk's opinion and did not specifically cite record evidence. ECF No. 14-1 at 23. However, this alone is not a basis for remand. Where, as here, "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision," any lack of clarity in the ALJ's decision is harmless so long as the RFC assessment is supported by substantial evidence. *Mongeur v. Heckler*, 722 F.2d

1033, 1040 (2d Cir. 1983); *Gladney v. Astrue*, No. 12-CV-6423P, 2014 WL 3557997, at *10 (W.D.N.Y. July 18, 2014). In this case, the ALJ's stated reasons and his summary of the treatment record, including his citations thereto, were sufficient to explain his rationale and allow for meaningful judicial review.

B.   **Consultative Examiners**

Plaintiff next challenges the ALJ's treatment of the opinions of the consultative examiners—Samuel Balderman, M.D. and Nikita Dave, M.D.

Dr. Balderman examined Plaintiff in February 2015, diagnosing him with cervical spine disease and lumbar spine pain, and opining that Plaintiff had a "moderate limitation in frequent change in position of the head due to cervical spine disease." Tr. 480. Dr. Dave performed a consultative examination in February 2019. Tr. 799-802. He diagnosed Plaintiff with ankylosing spondylitis, neck stiffness and pain, and low back pain. Tr. 801. Among other things, he opined that Plaintiff could sit for up to seven hours, stand for up to four hours, and walk for up to four hours each workday. Tr. 805. The ALJ appears not to have credited Dr. Balderman's opinion, calling it "rather vague."[5] Tr. 31. The ALJ gave Dr. Dave's opinion "greater weight," finding it "consistent with the evidence overall" and crediting Dr. Dave's "extensive program knowledge" and "very detailed examination" of Plaintiff. Tr. 31-32.

Plaintiff first argues that the ALJ improperly relied on Dr. Dave's opinion over Dr. Clerk's.[6] ECF No. 14-1 at 26, 29. As a general matter, however, because the ALJ reasonably found Dr. Clerk's opinion inconsistent with the record, he possessed the authority to give more

---

[5] The ALJ purported to give the opinion "some weight," but he did not incorporate any of the limitations contained in the opinion or otherwise articulate how he relied on it. *See* Tr. 31, 480.

[6] Plaintiff also contends that the ALJ erroneously relied on Dr. Balderman's opinion over Dr. Clerk's, but, as noted above, it is not clear to the Court whether or how the ALJ relied on Dr. Balderman's opinion.

6

weight to Dr. Dave's opinion to the extent it was more consistent with the record. *See, e.g.*, *Camille v. Colvin*, 652 F. App'x 25, 27-28 (2d Cir. 2016) (summary order); 20 C.F.R. § 416.927(c)(4). The ALJ could reasonably find that it was.

On examination, Dr. Dave found no tenderness in Plaintiff's spine, no redness, heat, or swelling, and a negative straight-leg raise. Tr. 801. He also observed that Plaintiff was in no acute distress, had an "unremarkable" heel-to-toe gait, and did not have any difficulty changing for the examination, moving on and off the examination table, or rising from a chair. Tr. 800. During and before the relevant period, Plaintiff's physical examinations produced similarly mild results. *See, e.g.*, Tr. 573 (October 2012); Tr. 479 (February 2015); Tr. 487 (June 2016); Tr. 491-92 (March 2017); Tr. 892 (June 2019). Furthermore, the evidence that Plaintiff engaged in a high level of physical activity and responded well to conservative treatment supports the level of functional ability that Dr. Dave identified.[7] *See* Tr. 30-31 (summarizing said evidence). To the extent Plaintiff identifies other evidence that is inconsistent with Dr. Dave's opinion or that could support his view of the evidence, that is insufficient to undermine the ALJ's decision. *See Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-119, 2019 WL 3083045, at *3 (W.D.N.Y. July 15, 2019) ("[T]he Court is not concerned with whether substantial evidence supports [the claimant's] position; rather, the Court must decide whether substantial evidence supports the ALJ's decision."); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.").

---

[7] Plaintiff challenges the ALJ's reliance on this evidence for other reasons, which the Court addresses below.

Plaintiff also contends that the ALJ's rationale for crediting Dr. Dave's opinion is too vague. But the Court can sufficiently glean the ALJ's rationale for crediting Dr. Dave's opinion, so any alleged vagueness does not warrant remand.[8] *See* Tr. 30-32.

Second, Plaintiff argues that the ALJ failed to explain why he declined to incorporate limitations identified by Dr. Balderman and Dr. Dave related to Plaintiff's neck and spine. *See* ECF No. 14-1 at 28, 30. Dr. Balderman opined that Plaintiff would be moderately limited in "frequent change in position of the head," Tr. 480, and Dr. Dave similarly stated that Plaintiff is moderately limited for "repetitive bending and twisting" in the spine and for "maintaining a non-neutral" spine position "for prolonged periods of time." Tr. 801. While it does appear that the ALJ neglected to address these limitations, *see* Tr. 29, any error is harmless in light of the vocational expert's testimony. The vocational expert testified that Plaintiff could perform three jobs in light of the RFC the ALJ constructed: routing clerk, housekeeping cleaner, and small products assembler. Tr. 33, 115-16. The vocational expert further testified that any restriction on spinal and head "twisting" would not affect a person's ability to do those jobs. *See* Tr. 120-22. Accordingly, the failure to include any such restrictions appears to be harmless, as it would not alter the Step 5 analysis. *See Ortiz v. Colvin*, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018) (collecting cases).

C.     **NP Dzielski**

On March 21, 2018, Plaintiff had an appointment with treating provider Deborah Dzielski, ANP, complaining of neck and low back pain. Tr. 850. In her treatment notes, Dzielski stated that Plaintiff was "a poor candidate for gainful employment at this time as he has no education or

---

[8] Plaintiff asserts that it was unfair to give more weight to Dr. Dave's opinion on the ground that it identified specific functional limitations, since Dr. Clerk's opinion also identified specific functional limitations. ECF No. 14-1 at 29. Given that the ALJ identified other good reasons for crediting Dr. Dave's opinion, this alleged error is, at most, harmless. *See Tammy B. v. Berryhill*, No. 18-CV-130, 2019 WL 79020, at *7 (N.D.N.Y. Jan. 2, 2019).

training." Tr. 850. The ALJ gave little weight to "this general statement" because it included no "specific functional limitations" or supporting explanation, and because she "considered factors unrelated to [Plaintiff's] medical disability." Tr. 32.

Plaintiff argues that the ALJ should have recontacted Dzielski to "obtain a more detailed statement addressing Plaintiff's function-by-function limitations or obtain clarification if it was unclear how [she] arrived [at] her conclusion." ECF No. 14-1 at 33. The Court disagrees. "[W]here there are no obvious gaps in the record and a complete medical history exists, the ALJ is not obligated to seek additional evidence." *David G. v. Comm'r of Soc. Sec.*, No. 19-CV-895, 2021 WL 821832, at *2 (W.D.N.Y. Mar. 4, 2021). Here, the administrative record is over 900 pages and contains nearly two-dozen medical exhibits, including several medical opinions from treating and consultative sources. This was a sufficient record to determine the nature and extent of Plaintiff's back and neck impairments. *See Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order) (ALJ did not have duty to recontact treating physician for additional opinion evidence where ALJ obtained a "complete medical history" consisting of "extensive patient treatment records prepared by numerous healthcare providers"). Furthermore, the ALJ reasonably rejected Dzielski's opinion because it was vague, conclusory, and based at least in part on Plaintiff's lack of education and training, rather than his functional abilities. *See Alexander v. Comm'r of Soc. Sec.*, No. 19-CV-762-FPG, 2020 WL 5642184, at *5 (W.D.N.Y Sept. 22, 2020); *cf. Donnelly v. Barnhart*, 105 F. App'x 306, 308 (2d Cir. 2004) (summary order) ("[T]he ALJ properly discounted portions of the doctors' opinions that made conclusory statements as to whether plaintiff was disabled.").

### D.    ALJ's Reliance on Certain Evidence

Finally, Plaintiff argues that the ALJ drew impermissible inferences from some of the evidence on which he relied. The Court examines each set of evidence below.[9]

Plaintiff asserts that it was unfair for the ALJ to rely on his level of physical activity and exercise to discount Plaintiff's complaints of pain and extreme functional limitations, as his physical abilities diminished over time. *See* ECF No. 14-1 at 35-36. An ALJ is permitted to consider a claimant's physical activities in assessing the claimant's subjective allegations of pain, 20 C.F.R. § 416.929(c)(3)(i), (vii), and in this case the ALJ could reasonably find that the activities in which Plaintiff engaged, and those which his providers recommended, were inconsistent with the limitations he alleged. *See, e.g.*, Tr. 797 (treating provider recommended 30-minutes of exercise six times per week); Tr. 868 (indicating that Plaintiff was able to participate in exercise program and was swimming three days per week). While there is some evidence that Plaintiff's ability to engage in such activities diminished over time, ECF No. 14-1 at 35-36, the ALJ could reasonably reach the opposite conclusion—that Plaintiff's condition *did not* deteriorate—based on the evidence he cited in the decision. Tr. 30-31. For example, as discussed above, there was evidence that Plaintiff's physical examinations were consistent over time. *Id*. Therefore, at most, this issue constituted a factual conflict that the ALJ could reasonably resolve against Plaintiff. *Youngs*, 2019 WL 3083045, at *3. Plaintiff further suggests that the ALJ put him in a "catch-22" by discounting his credibility on the basis that he engaged in physical activities recommended by his treatment providers. *See* ECF No. 14-1 at 35 ("The ALJ is placing Plaintiff in an unfair lose-

---

[9] Plaintiff frames this argument in terms of the ALJ's failure to identify what evidence was inconsistent with his subjective complaints of pain, in violation of 20 C.F.R. § 416.929 and SSR 16-3p. *See* ECF No. 14-1 at 34-35. The ALJ's decision, however, clearly identifies what evidence the ALJ believed to be inconsistent with Plaintiff's subjective complaints. *See* Tr. 30-31. The substance of Plaintiff's argument is not that the ALJ failed to identify evidence, but that the inferences he drew from such evidence were incorrect or impermissible. The Court focuses its analysis accordingly.

lose situation, where if he fails to comply with treatment, then the ALJ can find him to lack credibility, and if he complies with treatment, he is not disabled."). The Court is not persuaded by this logic. The ALJ could reasonably discount Plaintiff's complaints of pain and extreme debilitation on the basis that he engaged in a high level of physical activity. If Plaintiff were truly physically unable to complete such activities as part of physical therapy, the ALJ would be required to consider that fact before deeming Plaintiff to have been non-compliant with treatment. *See Velez v. Colvin*, No. 14-CV-1953, 2016 WL 3461155, at *11 (S.D.N.Y. Apr. 19, 2016) (stating that an ALJ may not draw any inferences from a claimant's noncompliance with treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").

Next, Plaintiff disputes the ALJ's conclusion that he received "essentially routine and/or conservative" treatment, Tr. 31, noting that he was prescribed "narcotic medications." ECF No. 14-1 at 36. To be sure, a narcotic is a serious intervention, but the thrust of the ALJ's point is reasonable. During the relevant period, providers suggested more conservative treatment protocols. Tr. 766 (in March 2014, noting that Plaintiff was only engaging in "aqua therapy"); 487 (in June 2016, suggesting that Plaintiff engage in "conservative treatment with physical therapy, muscle relaxant, and massage therapy"), and while Plaintiff was also prescribed an opioid due to pain, Tr. 793, he was able to tolerate the medication and still swim three times per week. *See, e.g.*, Tr. 862, 868. The ALJ could reasonably discount Plaintiff's subjective allegations of pain on the basis of the nature and efficacy of his treatment. *See Anderson v. Colvin*, No. 14-CV-1038, 2017 WL 2797913, at *3 (W.D.N.Y. June 28, 2017).

Finally, Plaintiff asserts that the ALJ mischaracterized the report of Tobias A. Mattei, M.D., a neurosurgical specialist.[10]  ECF No. 14-1 at 37.  The ALJ stated that the physical examination Dr. Mattei conducted "generated normal results."  Tr. 30.  Plaintiff argues that this is untrue because Dr. Mattei identified several tender points on Plaintiff's spine and noted that Plaintiff had pain with lateral rotation of extension of his neck.  ECF No. 14-1 at 37.  Even so, Dr. Mattei determined after the physical examination and a review of the MRI that Plaintiff only required conservative treatment like physical therapy, a muscle relaxant, or massage therapy.  Tr. 487.  Thus, the ALJ could reasonably conclude that Dr. Mattei's physical-examination findings did not suggest any extreme impairment.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 14, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 15, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 11, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[10] Plaintiff also makes two other passing arguments that do not merit a full discussion.  Plaintiff asserts that the ALJ selectively cited his 2012 treatment notes to conclude that his physical examinations "generated normal results."  ECF No. 14-1 at 36.  However, the ALJ also cited a variety of other treatment notes throughout the relevant period to support that conclusion, *see* Tr. 30, and Plaintiff fails to explain why, in light of all the cited evidence, the ALJ's inference was unreasonable.  Plaintiff also states that Dr. Clerk's office provided only "summary notes from January 11, 2016 onward," ECF No. 14-1 at 36, but he does not articulate how this constitutes an error on the ALJ's part.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").